UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-62115-CIV-ALTONAGA/Brown

**INTERNATIONAL SCHOOLS SERVICES, INC.**,

 Plaintiff,

vs.

**AAUG INSURANCE COMPANY, LTD.** and **GREGOR GREGORY**,

 Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court for a hearing on Plaintiff's Emergency *Ex Parte* Motion for a Temporary Restraining Order and Premininary [sic] Injunction ("Motion") [ECF No. 6], filed on November 3, 2010. The Court held a hearing on the Motion on November 9 and 10, 2010. The following findings of fact and conclusions of law are now made pursuant to the requirements of Rule 52(a)(2) of the Federal Rules of Civil Procedure.

### I. PROCEDURAL HISTORY

This case involves the failure of an insurance company to pay hundreds of health insurance claims made by educators and employees of forty-three international schools and their parent organization. Plaintiff, International Schools Services, Inc. ("ISS"), seeks a preliminary injunction against Defendant, AAUG Insurance Company, Ltd. ("AAUG"), to continue the enforcement of a Temporary Restraining Order ("TRO") [ECF No. 13], freezing up to $8,481,354.55 of AAUG's assets, and to obtain an immediate accounting of AAUG's records with respect to the net premiums paid under the ISS Financial & Insurance Network Inc. ("ISSFIN") EduCare International Plan (the "Plan"), a health care plan.

Case No. 10-62115-CIV-ALTONAGA/Brown

On November 3, 2010, ISS filed a Verified Complaint alleging fraud against AAUG and Gregor Gregory ("Gregory") (collectively, the "Defendants") (Count I); breach of contract against AAUG (Count II); and injunctive relief (Count III), accounting (Count IV) and civil conspiracy (Count V) against AAUG and Gregory.[1] (*See* V. Compl. ¶¶ 38–67 [ECF No. 1]). ISS concurrently filed a Motion to File Papers Under Seal [ECF No. 4] as well as the present Motion seeking a temporary restraining order and preliminary injunction to prevent AAUG and Gregory from further dissipating the net premiums intended to pay claims under the Plan. (*See* Mot. 1). The Court granted the motion to seal (*see* November 3, 2010 Order [ECF No. 12]), issued the requested TRO, and scheduled a hearing on ISS's motion for preliminary injunction. The TRO froze AAUG's assets up to $8,481,354.55, the amount of net premiums paid to AAUG for the Plan, until November 13, 2010. (*See* TRO 2). It also included a proviso for payment of AAUG's ordinary and necessary operating expenses upon an accounting with supporting documentation to ISS. (*See id.*).

All parties were present At the evidentiary hearing on the preliminary injunction motion. The Court received evidence and heard testimony from John Farrell ("Farrell"), President of ISSFIN; Gregory; and Sandra Logorda ("Logorda"), Chief Financial Officer of ISS. At the conclusion of the hearing, the Court ordered AAUG to provide ISS with a list of its ordinary and on-going operating expenses, and directed ISS to submit a proposed preliminary injunction order. The parties complied. AAUG subsequently submitted objections to ISS's proposed order [ECF No. 48] and its own proposed order [ECF No. 48-2], to which ISS filed a reply [ECF No. 51]. The Court also extended the TRO for an additional ten days upon ISS's showing of good cause at the evidentiary hearing. (*See* November 12, 2010 Order 1 [ECF No. 44]).

---

[1] Because injunctive relief is not a cause of action, the Court *sua sponte* dismissed Count III from the Complaint at the hearing. (*See* Hr'g Tr. 21, Nov. 9, 2010 ("Hr'g I") [ECF No. 40]).

2

Case No. 10-62115-CIV-ALTONAGA/Brown

## II. FINDINGS OF FACT

ISSFIN, a health insurance brokerage firm, developed the Plan and entered into a Terms of Business Agreement ("TBA") with AAUG, an insurance company incorporated in the British Virgin Islands ("BVI") and doing business in Florida. (*See* Hr'g I Tr. 27–28, 30–31; V. Compl. ¶¶ 2,7). AAUG is owned by AAUG Holdings, LLC; the holding company's sole shareholder is Gregory. (*See* Hr'g I Tr. 83). Gregory is also one of two directors of AAUG. (*See id.* 90).

According to Farrell, during meetings between ISSFIN and AAUG in advance of the TBA, Gregory represented to Farrell and ISSFIN that AAUG had the financial ability to insure the Plan, and the Plan would be backed by quota share reinsurance coverage with Colonial Life Insurance Company (Trinidad), Ltd. ("CLICO"), ACE and Lloyd's of London. (*See id.* 32–33).[2] AAUG began issuing Plan policies in July 2008 (*see id.* 33), and ultimately issued about sixty master group policies under the Plan (*see id.* 100).

ISS, a non-profit organization that manages and supports English-language schools abroad, and forty-three of its schools subsequently purchased group medical, dental, vision and life insurance coverage from AAUG (*see id.* 191–92), and AAUG issued 2,000 to 3,000 certificates verifying coverage under the Plan to the teachers and employees (*see id.* 100). ISS initially purchased its policy for school-year coverage commencing August 1, 2008 and renewed the policy for the 2009-2010 academic year. (*See id.* 34). About $8.451 million was paid in premiums to AAUG under the Plan between July 2008 and January 2010, exclusive of any commissions due to ISSFIN as broker. (*See id.* 42, 67, 81).

---

[2] Gregory did not recollect assuring Farrell that AAUG had quota share reinsurance coverage. (*See* Hr'g I Tr. 99). Later in his testimony, Gregory stated he did not tell Farrell AAUG had reinsurance coverage. (*See id.* 162). Whether AAUG was financially solvent at the time Gregory made representations to Farrell regarding AAUG's ability to insure the Plan is also disputed. (*See id.* 54–55; 72; 76; 127–129; Pl.'s Ex. 5 21; *see also* Resp. 14–15).

3

In January 2010, insured members and providers began complaining to ISS and ISSFIN that claim checks issued by AAUG were being returned by financial institutions for insufficient funds. (*See id.* 34–35). At a meeting between Farrell and Gregory on February 24, 2010, Gregory acknowledged AAUG had cash flow problems due to CLICO's financial condition, but stated he would arrange for replacement checks. (*See id.* 34–35, 114). It was also revealed at the meeting AAUG had a claims funding deficit of $1,328,170.38. (*See id.* 40, 114; Pl.'s Ex. 4). Gregory told Farrell AAUG did not have funds to pay the claims as it had used the premiums paid under the Plan for other obligations. (*See id.* 42, 114–15). Gregory also stated AAUG did not have quota share reinsurance in place, but had excess of loss reinsurance with Presidio. (*See id.* 45). Farrell's later investigation revealed and Gregory confirmed that AAUG's excess of loss reinsurance policy was cancelled for nonpayment of premiums six months earlier, in July 2009. (*See id.* 46, 103).

Approximately two hundred checks worth about $97,000.00 were issued by AAUG even though Gregory knew there were insufficient funds available in AAUG's claims account. (*See id.* 35, 105, 108). Gregory issued the checks on the belief that an electronic transfer of $261,000 from CLICO was in transit; however, the funds were never received by AAUG and the checks bounced. (*See id.* 156–57). Other checks issued by AAUG between May 15 and June 15, 2010 were returned to insured members and providers because the bank account on which the checks were drawn was closed. (*See id.* 38). Worldwide Expatriate Administrators ("WEA"), AAUG's administration company and a company in which Gregory previously had an ownership interest (*see id.* 111), later provided ISSFIN with documentation listing the unfunded claim checks, the amounts, and the replacement check numbers. (*See id.* 36–37). Despite reassurances by Gregory to Farrell,

Case No. 10-62115-CIV-ALTONAGA/Brown

replacement checks were never received by claimants. (*See* Hr'g I Tr. 39). Ultimately, AAUG stopped paying most — if not all — claims as of March 1, 2010.[3] (*See id.* 43, 117).

Following the February 2010 meeting and with AAUG's consent (*see id.* 69), ISSFIN worked with WEA to establish a separate account to which all future premiums under the Plan were directed and from which outstanding claims were paid. (*See id.* 43). Approximately $1.3 million in premiums were diverted into the special account and not paid to AAUG under the then-existing policy through the policy's termination date. (*See id.* 58–60). Those funds have since been exhausted to pay outstanding claims. (*See id.* 61). Sandra Logorda, the chief financial officer and treasurer of the Board of ISS and treasurer of the Board of ISSFIN, testified a $3 million line of credit was established between ISS and ISSFIN to fund the claims account. (*See id.* 194, 196, 198; Pl.'s Ex. 18). ISS has already deposited approximately $1.8 million in its own funds to pay outstanding claims, accepting assignment of those claims, and ISSFIN deposited approximately $805,000 of its monies. (*See id.* 61–62). WEA has continued to adjust the claims and since March 2010, has paid $3,722,819.99 in claims from the separate account. (*See id.* 59, 68).

Although the Plan's coverage ended as late as August 31, 2010, insureds and providers may continue to file claims under the Plan during the "run-out period" — up to 270 days after the expense was incurred. (*See id.* 60, 195). Over a recent three-week period, the ISSFIN-managed claims account has paid out close to $500,000 in claims. (*See id.* 200). According to Logorda, there are still outstanding claims that have not been paid (*see id.* 195), and ISS's teachers and their families abroad are being denied health care services because providers have not been paid by AAUG or ISS's employees are unable to pay the amounts owed as an out-of-pocket expense (*see id.* 192–93). Only

---

[3] Farrell testified AAUG stopped paying claims as of March 1, 2010. (*See* Hr'g I Tr. 43). Gregory testified AAUG may have paid out $100,000 to $120,000 in claims since the February 2010 meeting. (*See id.* 117–18).

$800,000 is left on the ISS line of credit, which Logorda estimates may fund outstanding claims for about four to six more weeks, at which time all claims will remain unfunded. (*See id.* 195, 200).

Currently, AAUG has two bank accounts with "a minimal amount" in the operating account and $30,000 to $40,000 in the other. (*Id.* 185). Additional future deposits into the accounts are expected as other insurance policy premiums are still being paid to AAUG. (*See id.* 187). AAUG is also owed "a million" from CLICO. (*Id.*).

### III. CONCLUSIONS OF LAW

ISS seeks a preliminary injunction against AAUG to continue the freeze of AAUG's assets imposed by the TRO and to obtain an immediate accounting of AAUG's records with respect to the net premiums paid under the Plan in the amount of $8,481,354.55. (*See* Mot. 1). To prevail on a motion for preliminary injunction a plaintiff must show:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008) (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002)). Moreover, "[i]t is well established in this circuit that '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion' as to all four elements." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation marks omitted)) (some bracketed material appearing in source). A preliminary injunction

Case No. 10-62115-CIV-ALTONAGA/Brown

is issued "within the sound discretion of the district court." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990) (citing *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987)).

At the hearing, the Defendants conceded ISS has shown a likelihood of success on the merits of at least one count in the underlying case. (*See* Hr'g Tr. 5–6 Nov. 10, 2010 ("Hr'g II Tr.") [ECF No. 43]). The issues disputed by the Defendants pertain to the second element. Defendants assert ISS has not met its burden of showing irreparable harm in the absence of an injunction or of supporting the requested amount of money to be frozen by the injunction. (*See id.* 5, 12–22). The following analysis addresses these two issues.

**A.     Irreparable Harm**

ISS maintains it, as a Plan policy holder, and its schools and employees, who are Plan policy and certificate holders, are likely to suffer irreparable harm in the absence of a preliminary injunction. (*See* Mot. 20–22). "A showing of irreparable harm is 'the *sine qua non* [for all] injunctive relief.'" *Ne. Fla. Chapter of the Ass'n of Gen. Contrs. of Am. v. City of J'ville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir.1978)) (bracketed material in original). The party seeking an injunction must establish an actual and imminent injury that cannot be undone by a monetary remedy. *See id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). "'Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm.'" *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

Case No. 10-62115-CIV-ALTONAGA/Brown

AAUG and Gregory assert ISS cannot establish irreparable harm because the policies underlying this dispute are no longer in force. (*See* Hr'g II Tr. 14). The Defendants maintain the injunction would not provide a remedy to any of the policyholders because their policies have expired. (*See id.* 15). Rather, the Defendants suggest the "case is about monetary relief," and "[t]here's no evidence that if [the] Court enters an injunction it would prevent any harm." (*Id.*). Plaintiff disagrees and points to the irreparable harm faced by policyholders whose claims will be unpaid, and the irreparable harm to ISS should AAUG and Gregory dissipate or conceal current and forthcoming assets. (*See* Mem. in Support of Pl.'s Mot. ("Pl.'s Mem.") 21–22 [ECF No. 7]). Each of these arguments is considered in turn.

### 1. Irreparable Harm to Policy and Certificate Holders

ISS's most persuasive showing of irreparable harm stems from the imminent injury to the health and welfare of its overseas employees, teachers, and their families who have outstanding claims not yet paid under the now-expired Plan policies. (*See* Pl.'s Mem. 22). Because ISS is unable to continue funding the alternative claims account, its overseas employees — some of whom are located in less-developed countries and in remote locations — will not have their claims paid and are likely to be turned away from health care providers because their outstanding debts have not been met. (*See* Hr'g I Tr. 193, 200). They may also be denied future health care coverage because of their failure to meet current obligations. (*See* Pl.'s Mem. 22). Even though the Plan's policies and certificates expired, ISS presented evidence and AAUG conceded that a significant number of claims continue to be submitted during the "run-out" period. (*See* Hr'g I Tr. 198; Pl.'s Ex. 9). Moreover, AAUG acknowledged outright that hospitals have not been paid for claims incurred by AAUG certificate holders. (*See* Hr'g II Tr. 15).

The Court need not wait for an ISS employee to be refused health care by an overseas medical facility or doctor because AAUG failed to pay the employee's health care claims to recognize the imminent harm confronting ISS's employees should their claims go unpaid. The death of a child, the loss of a limb, or prolonged suffering due to lack of treatment "cannot be undone by monetary means." *Ne. Fla. Chapter*, 896 F.2d at 1285 (quoting *Tucker Anthony Realty Corp.*, 888 F.2d at 975). ISS has met its burden of showing the irreparable harm likely to be suffered by those persons covered by the AAUG EduCare Plan should their claims be unpaid. Therefore, on these grounds, a preliminary injunction should be issued.

### 2. Irreparable Harm to ISS Should AAUG Funds be Dissipated

ISS also seeks to freeze AAUG's assets up to $8,481,354.55 to protect the entire amount of premiums paid to AAUG over the two-year life of the Plan. ISS alleged fraud in the inducement in the Verified Complaint, which, if proven, may ultimately entitle ISS to restitution of all consideration paid under the Plan. ISS claims it will be irreparably harmed if the full amount of the Plan premiums are removed from the Court's jurisdiction because the relief it seeks in this suit may no longer be available. (*See* Pl.'s Mem. 21). To support its assertion there is a likelihood AAUG will dissipate funds ISS seeks as relief, ISS points to the following facts: 1) AAUG is a BVI company; 2) AAUG has many offshore affiliates; 3) AAUG's 2008 Financial Statements indicate it was not in compliance with BVI's solvency margins; 4) AAUG knowingly issued checks without sufficient funding; 5) AAUG issued checks on a closed bank account; and 6) AAUG is currently under a cease-and-desist order from the State of Florida for insurance violations. (*See id.*). Although these facts were substantiated by the testimony and evidence, the Court is not persuaded an injunction should issue on these grounds.

While ISS has clearly shown — and the Defendants have conceded — a substantial likelihood of success on the merits of the breach of contract claim, ISS's likelihood of success on the other claims, particularly the fraud count, is not so compelling. Moreover, ISS has not shown it would suffer irreparable injury in the absence of an injunction freezing over $8.481 million in AAUG's assets. To grant a preliminary injunction on these grounds would run afoul of the Eleventh Circuit's admonition that preliminary injunctions for "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Ne. Fla. Chapter of the Ass'n of Gen. Contrs. of Am.*, 896 F.2d at 1285 (quoting *Sampson*, 415 U.S. at 90). "[I]f an injury can be 'undone through monetary remedies,' it is not irreparable." *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007) (quoting *Ne. Fla. Chapter of the Ass'n of Gen. Contrs. of Am.*, 896 F.2d at 1285). *See also BellSouth Telecomm., Inc. v. MCIMetro Access Transmiss. Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (holding "[e]conomic losses alone do not justify a preliminary injunction"). While courts have found irreparable injury even when "a later money judgment might undo an alleged injury," they only do so when "damages would be 'difficult or impossible to calculate.'" *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (quoting *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. 1981) (collecting cases for proposition that substantial loss of business, bankruptcy and loss of revenue may be irreparable injury)). *See also Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1321 (11th Cir. 2010) (harm to consumer goodwill); *Fla. Businessmen for Free Enter.*, 648 F.2d at 958 n.3 (collecting cases for proposition that the impossibility of calculating loss of goodwill is irreparable injury)).

Case No. 10-62115-CIV-ALTONAGA/Brown

The evidence and testimony in this case simply do not indicate ISS will suffer irreparable harm that cannot be remedied by a money judgment, and ISS is not in a financial position from which it could not recover, such as bankruptcy or the impending loss of substantial business. Logorda testified that the $3 million line of credit ISS issued to pay the outstanding claims is 40 percent of ISS's reserves. (*See* Hr'g I Tr. 198). The minutes of the June 14, 2010 special meeting of ISS's Board of Directors at which the Board approved increasing the line of credit from $1.5 to $3 million also indicate "the company has adequate amount of cash to continue business. It would not deter any planned business activities for the year ahead . . . ." (Pl.'s Ex. 17). The minutes also reveal that the presiding Board member suggested "ISS will be prepared for the worst situation, which would mean spending most of the allocated resources and not getting anything back, and work toward a better scenario while keeping ISS' reputation intact." (*Id.*). In short, like the appellants in *SME Racks, Inc.*, "whatever harm the [Plaintiff] may suffer can be remedied by money damages." 243 F. App'x at 504.

**B.  The Scope of the Preliminary Injunction**

ISS seeks an injunction that freezes AAUG's assets up to $8,481,354.55 and requires an immediate accounting of the premiums paid under the Plan. (*See* Mot. 1). Based on the foregoing finding of irreparable harm, a preliminary injunction will issue against AAUG. However, "a preliminary injunction must be 'narrowly tailored to fit specific legal violations, because the district court should not impose unnecessary burdens on lawful activity.'" *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (quoting *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999). An injunction that both freezes the assets of AAUG and allows for a forensic accounting of AAUG's business records to trace Plan premiums for the purpose

Case No. 10-62115-CIV-ALTONAGA/Brown

of identifying any available AAUG monies to fund the outstanding claims of those insured by the Plan is narrowly tailored relative to AAUG's breach of the Plan. Given these limited purposes, the preliminary injunction is not linked to the amount of the Plan premiums previously paid by ISS, and it requires that available AAUG funds be used to pay the outstanding Plan claims filed during the run-out period while the injunction is in force.

In balancing the harms between the parties, a preliminary injunction mediates the greater harm likely to be suffered by Plan members whose claims remain unfunded against the mere economic burden imposed on AAUG by a freeze of its assets. Such an injunction does not disserve the public interest.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for a Preliminary Injunction **[ECF No. 6]** is **GRANTED** as follows:

   1. AAUG Insurance Company, Ltd. and its officers, directors, agents, servants, employees, assigns, parents, subsidiaries, affiliates, attorneys, and banking and other financial institutions are restrained and enjoined from dissipating, disbursing, diverting, transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, converting, withdrawing, or otherwise disposing of any and all assets, funds, monies, securities, investments, receivables, proceeds and/or unliquidated interests of any type whatsoever now in AAUG's possession and/or under its control and/or owed to it or which in the future becomes owed to it, as well as any and all assets, funds, monies, securities and/or unliquidated interests hereinafter received by it, except the ordinary and necessary operating expenses of AAUG Insurance Company, Ltd. may be paid no more than ten (10) days in advance of the due date for each expense and must be accounted for with supporting documentation to International Schools Services, Inc. on the fifteenth (15th) and thirtieth (30th) day of each month following payment until further order of the Court.

   2. The ordinary and necessary operating expenses of AAUG Insurance Company, Ltd. include (a) those expenses set forth in Exhibit A attached to this Order, and (b) the payment of other claims from premiums collected by AAUG Insurance Company, Ltd. relating to such claims.

Case No. 10-62115-CIV-ALTONAGA/Brown

3. If AAUG Insurance Company, Ltd. incurs any ordinary and necessary operating expenses in the future other than the expenses described in paragraph two (2) above, such expenses may only be paid by AAUG Insurance Company, Ltd. ten (10) days in advance of the due date for such expenses if (a) International Schools Services, Inc. agrees in writing that such expenses are ordinary and necessary and may be paid, or (b) by further order of the Court upon motion with notice.

4. Any and all AAUG Insurance Company, Ltd. funds not used for ordinary and necessary operating expenses, as defined in paragraphs two (2) and three (3) above, shall be used to pay outstanding claims under the ISSFIN EduCare International Plan, which shall be treated as ordinary and necessary operating expenses under this Order.

5. AAUG Insurance Company, Ltd. will immediately advise International Schools Services, Inc. in writing of each and every location within and without the United States where it stores and maintains its books and records, including data electronically stored, concerning its financial transactions with respect to the ISSFIN EduCare International Plan Premiums ("Premiums"). AAUG Insurance Company, Ltd. shall maintain and protect such books and records and shall not damage, destroy, alter, modify, secrete, withhold or remove such books and records without further Order of the Court upon motion with notice.

6. AAUG Insurance Company, Ltd. will immediately provide International Schools Services, Inc. and/or any forensic accountant or forensic accounting firm of International Schools Services, Inc.'s choosing with access without limitation to each and every location where AAUG Insurance Company, Ltd. stores and maintains its books and records concerning its financial transactions with respect to the Premiums, both within and without the United States, and permit International Schools Services, Inc. and/or any forensic accountant or forensic accounting firm of International Schools Services, Inc.'s choosing to inspect and copy such books and records, in whatever form they are stored or maintained in the ordinary course of business (hard copies and/or electronic), in whole or part. International Schools Services, Inc. and/or any forensic accountant or forensic accounting firm of International Schools Services, Inc.'s choosing may copy such books and records in whole or part at its/their sole discretion at the premises where such books and records are maintained or remove such books and records for the sole purpose of copying off premises and returning the same as soon as reasonably possible. The copies of such books and records may be taken by International Schools Services, Inc. and/or any forensic accountant or forensic accounting firm of International Schools Services, Inc.'s choosing to its/their offices.

7. The expenses incurred by International Schools Services, Inc. and/or any forensic accountant or forensic accounting firm of International Schools Services, Inc.'s choosing in inspecting, copying, analyzing and providing reports in connection with AAUG Insurance Company, Ltd.'s books and records will be considered ordinary and necessary expenses of AAUG Insurance Company, Ltd. and will be paid by AAUG Insurance Company, Ltd. out of its existing assets or bank accounts.

Case No. 10-62115-CIV-ALTONAGA/Brown

8. AAUG Insurance Company, Ltd. shall immediately instruct its auditors, including without limitation Baker Tilly (BVI) Limited, and its managers, including without limitation Caledonian Insurance Services (BVI) Ltd., to cooperate with International Schools Services, Inc. and its forensic accountant with respect to this matter and provide all documents and information requested by International Schools Services, Inc. and/or its forensic accountant concerning AAUG Insurance Company, Ltd.

9. AAUG Insurance Company, Ltd. shall immediately provide International Schools Services, Inc. with a power of attorney to request information and documents on AAUG Insurance Company, Ltd.'s behalf from Colonial Life Insurance Company (Trinidad), Ltd. ("CLICO") under AAUG Insurance Company, Ltd.'s agreements with CLICO.

10. This injunction is effective immediately, without the posting of a bond or other security.

11. This injunction shall remain in effect until entry of a final judgment or until otherwise ordered.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of November, 2010.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Case No. 10-62115-CIV-ALTONAGA/Brown

# EXHIBIT A

## ORDINARY AND NECESSARY OPERATING EXPENSES OF AAUG INSURANCE COMPANY, LTD.

A. **Recurring Monthly Expenses to be Paid Without Further Consultation Between the Parties**

| | |
|---|---:|
| Legal | $ 20,000 |
| Office Management | 1,000 |
| Accounting | 2,000 |

B. **Expenses to be Paid on a Recurring Monthly Basis Upon the Submission of Satisfactory Documentation and Approval Pursuant to Paragraph 3 of the Order**

| | |
|---|---:|
| Professional | $ 5,000 |
| BVI Nexus Fees | 2,085 |
| Miscellaneous | 1,000 |
| Claims Management | 20,000 |

C. **Expenses to be Paid on a One-Time Basis Upon the Submission of Satisfactory Documentation and Approval Pursuant to Paragraph 3 of the Order**

| | |
|---|---:|
| Caladonian Management Expense | $ 16,600 |
| Baker Tilly | 15,000 |