## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 10-62115-CIV-ALTONAGA/Brown

**INTERNATIONAL SCHOOLS
SERVICES, INC.,**

      Plaintiff,

vs.

**AAUG INSURANCE COMPANY,
LTD.** and **GREGOR GREGORY**,

      Defendants.

_____/

### ORDER

**THIS CAUSE** came before the Court on Plaintiff, International Schools Services, Inc.'s

("ISS[']") Motion to Compel Compliance with and Hold Defendants in Civil Contempt for their

Continuous Violations of the Preliminary Injunction Order ("Motion") [ECF No. 132].  The Court

has considered the parties' written submissions and applicable law.

### I. BACKGROUND[1]

This case arises from an insurance company's failure to pay the healthcare claims of its

insureds, who are employees and educators of forty-three international schools.  ISS filed suit against

Defendants on November 3, 2010 and sought a preliminary injunction to freeze Defendants, AAUG

Insurance Company, Ltd. ("AAUG") and Gregor Gregory's (collectively, "Defendants[']") assets

and obtain an accounting of AAUG's records relative to the premiums paid and claims disbursed

---

[1]  A detailed recitation of the background of the case can be found in the Court's November 19, 2010
Order ("Preliminary Injunction") [ECF No. 54].  (*See* Prelim. Inj. 1–3).

Case No. 10-62115-CIV-ALTONAGA/Brown

under the ISS Financial & Insurance Network, Inc. EduCare International Plan ("Plan"). (*See* Mot. for Prelim. Inj. [ECF No. 6]).

Following a two-day evidentiary hearing, and after careful consideration of the testimony and evidence, the Court granted ISS' Motion for a Preliminary Injunction to the extent ISS sought to identify and utilize AAUG funds to pay the outstanding claims of the policyholders during the run-out period. (*See* Order Granting Mot. for Prelim. Inj. ("Prelim. Inj.") [ECF No. 54] 12). The Order directed that all funds not used for AAUG's ordinary and necessary operating expenses be used to pay outstanding claims under the Plan. (*See id.* 13). Defendants then filed a Motion for Rehearing of Order Granting ISS' Motion for Preliminary Injunction ("Motion for Rehearing") [ECF No. 66]. The Court denied Defendants' Motion for Rehearing on January 7, 2011. (*See* Jan. 7, 2011 Order ("Jan. 7 Order") [ECF No. 115]). Subsequently, Defendants sought a stay of enforcement of the Preliminary Injunction pending its appeal. (*See* Mot. to Stay [ECF No. 117] 10). The Court denied that motion as well. (*See* Feb. 18, 2011 Order ("Feb. 18 Order") [ECF No. 134]).

ISS now seeks an order compelling Defendants' compliance with the Preliminary Injunction and holding Defendants in civil contempt for violating the same.

## II. APPLICABLE LEGAL STANDARD

"Civil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained." *Bank of Am., N.A. v. United Cities Grp., Inc.*, No. 08-21917-CIV, 2009 WL 855987, at *4 (S.D. Fla. Mar. 31, 2009) (citation omitted). "The party seeking contempt bears the initial burden of showing, by clear and convincing evidence, a willful disregard for the authority of the court through failure to comply with a court order." *Id.* (citing *Ga. Power Co. v. Nat'l Labor Rel. Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007)).

The clear and convincing evidence must show: "(1) the allegedly violated order was valid and lawful; (2) the order was *clear and unambiguous*; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co.*, 484 F.3d at 1291 (emphasis in original). "[O]nce the moving party makes a prima facie showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a 'present inability to comply that goes beyond a mere assertion of inability . . . .'" *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) (quoting *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 976 (11th Cir. 1986)).

The Eleventh Circuit has held "'[i]n determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard.'" *Ga. Power Co.*, 484 F.3d at 1291 (quoting *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002)). Moreover, the court should "construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt." *Id.* The focus in a civil contempt proceeding "'is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.'" *Id.* (quoting *Howard Johnson*, 892 F.2d at 1516).

## III. DISCUSSION

### A. The Preliminary Injunction is valid and lawful.

The Court entered the Preliminary Injunction on November 19, 2010, after holding a two-day evidentiary hearing, making all the necessary findings, and addressing the requirements of Federal Rule of Civil Procedure 65. *See* FED. R. CIV. P. 65. In response to Defendants' Motion for Rehearing and their Motion to Stay, the Court once again considered the necessity and propriety of

Case No. 10-62115-CIV-ALTONAGA/Brown

the Preliminary Injunction and affirmed its validity. (*See* Jan. 7 Order; Feb. 18 Order). While it is

the subject of a pending, interlocutory appeal, the Preliminary Injunction is valid and lawful, and

it remains in full force and effect as of the date of this Order.

### B. The Preliminary Injunction is clear and unambiguous.

The Preliminary Injunction provides, in relevant part:

1. AAUG Insurance Company, Ltd. and its officers, directors, agents . . . are
restrained and enjoined from dissipating, disbursing, diverting, transferring, selling,
alienating, liquidating, encumbering, pledging, leasing, loaning, assigning,
concealing, converting, withdrawing, or otherwise disposing of any and all assets,
funds, monies, securities, investments, receivables, proceeds and/or unliquidated
interests of any type whatsoever now in AAUG's possession and/or under its control
and/or owed to it or which in the future becomes owed to it, as well as any and all
assets, funds, monies, securities and/or unliquidated interests hereinafter received by
it, except the ordinary and necessary operating expenses of AAUG Insurance
Company, Ltd. may be paid no more than ten (10) days in advance of the due date for
each expense and must be accounted for with supporting documentation to
International Schools Services, Inc. on the fifteenth (15th) and thirtieth (30th) day of
each month following payment until further order of the Court.

. . .

4. Any and all AAUG Insurance Company, Ltd. funds not used for ordinary and
necessary operating expenses, as defined in paragraphs two (2) and three (3) above,
shall be used to pay outstanding claims under the ISSFIN EduCare International Plan,
which shall be treated as ordinary and necessary operating expenses under this Order.

. . .

7. The expenses incurred by International Schools Services, Inc. and/or any forensic
accountant or forensic accounting firm or International Schools Services, Inc.'s
choosing in inspecting, copying, analyzing and providing reports in connection with
AAUG Insurance Company, Ltd.'s books and records will be considered ordinary
and necessary expenses of AAUG Insurance Company, Ltd. and will be paid by
AAUG Insurance Company, Ltd. out of its existing bank accounts.

(Prelim. Inj. 12–13). The language of the Injunction is clear that Defendants are prohibited from

"dissipating, . . . transferring, . . . assigning, alienating, . . . or otherwise disposing of any and all

assets . . . whatsoever now in AAUG's possession and/or under its control." (*Id*.). This restraint on

the dissipation of AAUG's assets has been in place continuously since November 4, 2010.  (*See* Temporary Restraining Order ("TRO") [ECF No. 13]; Order Extending TRO [ECF No. 44]; Prelim. Inj.).  The Injunction is equally clear AAUG must account for its ordinary and necessary operating expenses and use any funds not used for those expenses to pay outstanding claims under the Plan.

### C. Defendants had the ability to comply with the Order, but did not do so.

ISS contends Defendants violated the Court's Orders because Defendants transferred or dissipated  assets out of previously undisclosed accounts in violation of both the TRO and Preliminary Injunction.  (*See* Mot. 3).  In addition, ISS asserts Defendants disregarded other requirements of the Preliminary Injunction by failing to account for all ordinary and necessary operating expenses on the 15th and the 30th of each month, use any funds not used for ordinary and necessary expenses to pay outstanding claims under the Plan, and pay the expenses incurred by ISS' forensic accountant in analyzing AAUG's books and records.  (*See id.* 3–5).

#### 1. *Dissipation of Assets*

ISS maintains Defendants violated the Preliminary Injunction because they "transferred (or permitted to be transferred) at [sic] total of no less than $351,316.20 from one of its undisclosed accounts to others subsequent to November 4, 2010, the date that defendants were served via personal delivery with the Court's Temporary Restraining Order." (*Id.* 3).  In response, Defendants maintain they have complied with the Preliminary Injunction, and to the extent ISS asserts the Order requires Defendants to return "any and all funds that were transferred out of the subject Reich & Tang account" (Mot. 15), they are unable to comply with that request as they do not have control of those accounts, and have not had control of the accounts since March 2010.  (*See* Def.'s Resp. to

Case No. 10-62115-CIV-ALTONAGA/Brown

Pl.'s Mot. to Compel Compliance ("Response") [ECF No. 143] 2–3) ("[ISS'] main arguments center around monies that are not the property of AAUG.").

Defendants explain that, as a result of a sales agreement executed between AAUG and Premier Assurance Group Limited ("Premier") in March 2010, and a subsequent Portfolio Transfer Agreement ("PTA"), the accounts at issue are no longer the property of Defendants. (*See id*. 2). Defendants claim they entered into those agreements with Premier in order to comply with a newly-enacted British Virgin Islands ("BVI") Insurance Act which essentially required AAUG to divest itself of its long-term life insurance business. (*See id.* 4). Therefore, according to Defendants, "from March 2010 forward, all monies in the accounts mentioned in [ISS' Motion] have belonged solely to Premier," and "AAUG's name is only on the accounts until the final approval by the BVI regulators allows it to be removed." (*Id.*).

The Preliminary Injunction, by its terms, applies only to assets or funds "in AAUG's possession and/or under its control and/or owed to it or which in the future becomes owed to it." (Prelim. Inj. 12). Thus, if Defendants did in fact transfer the assets prior to the issuance of the TRO and Injunction, then the transfer of monies from those accounts would not constitute a violation of the Orders by AAUG. However, Defendants have not provided any documentary evidence establishing they entered into a sales agreement with Premier in March 2010, nor have they submitted any evidence to support their assertions that Premier, as opposed to AAUG, owns and controls the accounts at issue. (*See id.* 4). In fact, Defendants acknowledge the accounts are still under AAUG's name. (*See id.*).

In addition, although Defendants contend the accounts already belong to Premier, their written submissions indicate that, at least with respect to the PTA, the agreements between Premier

Case No. 10-62115-CIV-ALTONAGA/Brown

and AAUG have not been finalized.  (*See* Mot. for Determination by the Court that Def.'s Actions are not in Violation of the Courts' [sic] Orders [ECF No. 137] 4) ("Gregory feels that it is best to await a ruling from this Court before he signs the remaining documents as required under the agreement . . . [ISS] is making the motion for contempt despite being aware of the circumstances; namely, that *unless the transaction is concluded* . . .") (emphasis added).  More importantly, the PTA, by its own terms, did not go into effect until *after* the TRO was issued and served upon Defendants.  (*See* PTA [ECF No. 89-2] 1, 9).  Indeed, although the signature page of the agreement indicates it was signed by both AAUG and Premier on October 13, 2010, before the present lawsuit was filed, the language of the agreement indicates the effective date of the agreement is December 1, 2010.  (*See id.*) ("This agreement is made the first day of December, 2010 . . . the Parties have duly executed this agreement as of the date first written above.").

        The Court, after noting the discrepancy in the dates contained in the PTA, ordered the parties to provide supplemental briefing on this factual issue.  (*See* March 11, 2011 Order [ECF No. 148] 1–2).  Defendants' supplemental brief acknowledges the effective date of the PTA was in fact December 1, 2010.  (*See* Def.'s Verified Suppl. Br. [ECF No. 150] 1).  Defendants' brief explains that although the agreement was signed in October, the parties allotted additional time before the agreement was made effective "because the laws of the British Virgin Islands required that once the agreement was approved by the insurance commissioner, it then had to be stamped by a judge in the BVI." (*Id.*).  Defendants also admit the agreement was never stamped by a judge "since the lawsuit was filed before that step could be completed, the injunction prevented this step, and has effectively frozen the transaction." (*Id.* 1–2).  Because Defendants acknowledge the PTA was neither

7

Case No. 10-62115-CIV-ALTONAGA/Brown

consummated nor made effective prior to the TRO being issued, their argument that the PTA divested them of these accounts before the Court enjoined them necessarily fails.

Moreover, even if the PTA is an enforceable contract, the Preliminary Injunction would still prevent Defendants from carrying out their contractual obligation to transfer the accounts on December 1, 2010. In other words, the Preliminary Injunction prohibited Defendants from transferring any assets owned or controlled by AAUG after November 4, 2010 (other than those used to pay ordinary and necessary operating expenses), and this is true even if Defendants had a separate contractual obligation to do so, as the Preliminary Injunction makes no general exception for assets transferred pursuant to contractual obligations. Defendants do not contend this contractual obligation to transfer a large subset of its business constitutes an ordinary and necessary business expense, nor could they. Consequently, by allowing these assets to be transferred and dissipated, notwithstanding the reason behind the transfer, Defendants have violated an Order of the Court.[2]

The same rationale applies with regard to the $50,000 transferred out of AAUG's premium account ("5129 account"). Defendants contend the transfer does not violate the Preliminary Injunction because "it is clear that a total of $50,000 was borrowed from the Wachovia 5272 account, deposited in the AAUG 5129 account, then paid back." (*Id.* 6). Nevertheless, even if the money was transferred out of the 5129 account for the purpose of repaying a loan, the Preliminary Injunction prohibits Defendants from transferring or dissipating *any* assets or funds in AAUG's possession or control (other than those used to pay ordinary and necessary operating expenses).

---

[2] The bank statement for at least one of the accounts at issue identifies Premier as the agent for the account. (*See* "Reich & Tang Account Statement" [ECF No. 89-4] 2). The Court notes the Preliminary Injunction states it applies to AAUG *and its agents*. In Florida, "a principal is liable for the acts of its agent under both express and apparent authority." *Bhadelia v. Marina Club of Tampa*, 142 F. App'x 399, 401 (11th Cir. 2005) (citing *Stiles v. Gordon Land Co.*, 44 So. 2d 417, 421 (Fla. 1950)). Thus, it was AAUG's duty to prevent transfer or dissipation of funds by Premier, and AAUG is liable for the failure to do so.

8

Defendants do not assert this one-time repayment was an ordinary and necessary operating expense. Thus, notwithstanding Defendants' explanation regarding the reason for the transfer, the dissipation of funds violates the Injunction.

ISS has presented clear and convincing evidence that funds have been dissipated or transferred in violation of the Preliminary Injunction.

### 2. *Other Violations*

ISS contends Defendants disregarded the Preliminary Injunction by failing to: (a) account for all ongoing ordinary and necessary operating expenses on the 15th and the 30th of each month; (b) use any funds not used for ordinary and necessary expenses to pay outstanding claims under the Plan; and (c) pay the expenses incurred by ISS' forensic accountant in analyzing AAUG's books and records.

Defendants do not dispute they have not submitted bi-monthly reports accounting for all ordinary and necessary operating expenses. Instead, they maintain "AAUG has paid out no expenses . . . . Thus, there is nothing to account for." (Resp. 8). The Preliminary Injunction provides that: "the ordinary and necessary operating expenses of AAUG . . . must be accounted for with supporting documentation to International Schools Services, Inc. on the fifteenth (15th) and thirtieth (30th) day of each month *following payment*." (Prelim. Inj. 12) (emphasis added). This language implies supporting documentation need only be provided to ISS if expenses have actually been paid out. Although the Court finds suspicious Defendants' assertion that they have not paid for any operating expenses since November 2010, ISS does not present clear and convincing evidence demonstrating otherwise. Thus, the Court cannot say Defendants have violated the Order by failing to submit documentation accounting for any such payments.

9

Case No. 10-62115-CIV-ALTONAGA/Brown

With regard to Defendants' obligation to pay expenses incurred by ISS' forensic accountant and use any other funds to pay outstanding claims under the Plan, Defendants assert "AAUG has no money to pay any of its bills, much less the [forensic accountant's] bill." (Resp. 9). Defendants further state: "The Eleventh Circuit has said that inability to pay is a defense to civil contempt, as long as the contemnor did not create the inability." (*Id.* 11). However, as discussed, Defendants have allowed dissipation of certain assets of AAUG in violation of the Preliminary Injunction. Thus, it seems that Defendants themselves have, at least in part, created their alleged inability to pay. Consequently, the Court finds Defendants are in violation of the Preliminary Injunction for failing to pay ISS' forensic accountant, and failing to use any money not used for ordinary and necessary operating expenses to pay off outstanding claims.

## IV. CONCLUSION

The facts and records before the Court indicate Defendants have violated the Preliminary Injunction, and thus the burden was on Defendants to show an inability to comply. Defendants have not satisfied this burden and therefore, a finding of civil contempt against Defendants is warranted.[3]

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      ISS' Motion to Compel Compliance with and Hold Defendants in Civil Contempt for

their Continuous Violations of the Preliminary Injunction Order **[ECF No. 132]** is

**GRANTED**.   Defendants   are   found   to   be   in   civil   contempt   for   violating   the

---

[3] Even if Defendants truly believed they were not violating the Preliminary Injunction, the subjective beliefs or intent of the alleged contemnors is not the focus of the Court's inquiry in civil contempt proceedings; instead, the focus is on whether in fact their conduct complied with the order at issue. *See Howard Johnson Co., Inc.*, 892 F.2d at 1516.

10

Case No. 10-62115-CIV-ALTONAGA/Brown

Preliminary Injunction Order by allowing AAUG's funds to be transferred or dissipated and by failing to pay ISS' forensic accounting bills. The Court reserves jurisdiction to address appropriate sanctions.

2.      Defendants' Motion for Determination by the Court That Defendants' Actions Are Not in Violation of the Courts' [sic] Orders **[ECF No. 137]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of March, 2011.


_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

11