UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-62115-CIV-ALTONAGA/Simonton

INTERNATIONAL SCHOOLS
SERVICES, INC.,

    Plaintiff,

vs.

**AAUG INSURANCE COMPANY,
LTD.** and **GREGOR GREGORY**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendants, AAUG Insurance Company, Ltd. ("AAUG") and Gregor Gregory's ("Gregory[']s") (collectively "Defendants[']"), Motion to Dismiss Amended Complaint . . . ("Motion") [ECF No. 216], filed on June 18, 2012. The Court has carefully considered the parties written submissions and the applicable law.

### I.  PROCEDURAL BACKGROUND

On November 3, 2010, Plaintiff, International Schools Services, Inc. ("Plaintiff" or "ISS"), filed a Complaint [ECF No. 1] alleging claims of fraud, accounting, and civil conspiracy against both AAUG and Gregory, and a breach of contract claim against AAUG. Thereafter, on January 20, 2012, Plaintiff filed a Motion for Partial Summary Judgment [ECF No. 195] seeking resolution of a portion of its breach of contract claim against AAUG. (*See id.* 12). On February 13, 2012, Defendants filed a Response [ECF No. 201] stating that partial summary judgment was inappropriate because Plaintiff stated other claims in its Complaint — fraud, civil conspiracy, and accounting — that seek to recover for the same loss as the breach of contract claim. (*See id.*

12).

Subsequently, on May 8, 2012, Plaintiff filed a Motion to Request Determination . . . ("Motion to Request Determination") [ECF No. 204], requesting a decision on the Motion for Partial Summary Judgment, modifying the relief it had originally requested, and stating that it was waiving its right to prove any additional damages for the breach of contract claim, thereby enabling the Court to resolve the entire claim at one time. (*See id.* 3). Defendants still opposed the Motion for Partial Summary Judgment on the grounds that the damages on the breach of contract claim are "intertwined and inseparable" from the other claims against AAUG (Response 2 [ECF No. 205]), and because Plaintiff's waiver of its right to collect additional damages on its breach of contract claim was "meaningless and of no value" given that Plaintiff could seek the same damages "under the guise of its 'fraud' and 'civil conspiracy' claims" (*id.* 4).

Thereafter, on May 31, 2012, Plaintiff filed a Motion to Amend Its Pleading . . . ("Motion to Amend") [ECF No. 206], requesting that it be allowed to dismiss all of the claims against AAUG except for the breach of contract claim, and add a prayer for punitive damages against Gregory. The following day, on June 1, 2012, ISS filed a Reply [ECF No. 207] in support of its Motion to Request Determination, arguing that if the Court granted the Motion to Amend, there should be no issue about commingled claims, and the Court could be in a position to grant final judgment on the breach of contract claim. (*See id.* 3).

On June 6, 2012, the Court issued an Omnibus Order [ECF No. 212] granting Plaintiff's Motion to Request Determination and Motion to Amend, while requesting Defendants file a position statement explaining whether, if at all, they continued to oppose a partial summary judgment given the revised claims stated in the Amended Complaint. Although Plaintiff filed its Amended Complaint [ECF No. 213] with the intention of removing issues raised in opposition to

its Motion for Partial Summary Judgment, rather than have that effect, the Amended Complaint is now the subject of Defendants' Motion to Dismiss.

On June 14, 2012, Defendants filed their position statement [ECF No. 215], explaining that prior to ruling on Plaintiff's Motion for Summary Judgment, Defendants should be afforded an opportunity to file a motion to dismiss the Amended Complaint. Thereafter, on June 18, 2012, Defendants' filed the present Motion, which seeks to dismiss all of the claims against them. (*See* Mot. 1). Plaintiff filed a Response ("Response") [ECF No. 219] to the Motion on June 22, 2012, 2012; to which Defendants replied ("Reply") [ECF No. 222] on June 29, 2012.

## II. FACTUAL BACKGROUND

This case involves the failure of an insurance company to pay hundreds of health insurance claims made by educators and employees of 43 international schools and their parent organization. ISS is a non-profit business entity existing under the laws of the District of Columbia, with its principal place of business in Princeton, New Jersey. (*See* Am. Compl. ¶ 2). The sole member of ISS is the International Schools Foundation ("Foundation"), a non-profit business entity with its principal place of business in New Jersey. (*See id.*). ISS Financial & Insurance Network, Inc. ("ISSFIN") is a health insurance brokerage firm that developed the EduCare International Plan ("Plan") — the group medical, dental, vision and life insurance plan for international educators that is the subject of this lawsuit. (*See id.* ¶ 7). ISSFIN was ISS's agent with respect to the transactions and communications underlying the claims contained in the Amended Complaint. (*See id.*). AAUG is a business incorporated under the laws of the British Virgin Islands, with its headquarters and principal place of business in Fort Lauderdale, Florida. (*See id.* ¶ 3). Gregory is an officer, director, owner and shareholder of AAUG, with principal responsibility for directing AAUG's operations. (*See id.* ¶ 4).

The Amended Complaint alleges the following. In spring 2008, ISSFIN and Gregory were engaged in negotiations regarding the possibility of AAUG insuring the Plan. During those negotiations, Gregory, on behalf of AAUG, communicated to ISS, through its agent ISSFIN, that AAUG had the financial capacity to insure the Plan, and that AAUG had quota share reinsurance coverage with various reinsurers. (*See id.* ¶ 8). Gregory's representations were false, however. At the time Gregory made them he knew that AAUG did not have the financial capacity to insure the Plan, and that the quota share reinsurance coverage in question had been cancelled. (*See id.* ¶ 9). Unaware of Gregory's misrepresentations, ISSFIN permitted AAUG to issue policies to the schools participating in the Plan. (*See id.* ¶ 8).

On August 1, 2008, ISS purchased such a policy from AAUG — 42 other schools located throughout the world also purchased policies. (*See id.* ¶ 7–8). Thereafter, in February 2010, insured members and providers began complaining to ISS and ISSFIN that claim checks, signed by Gregory and issued by AAUG, were being returned by financial institutions for insufficient funds. (*See id.* ¶ 17). The total face value of the worthless checks issued to pay claims under the Plan policies is approximately $97,000. (*See id.* ¶ 20). Many of the certificate holders in the Plan have submitted claims for benefits under their policies, but AAUG has failed to pay many of them. (*See id.* ¶¶ 22–23). ISS and the other insureds under the Plan have paid AAUG a total net of $8,481,354.55 in premiums through January 2010. (*See id.* ¶ 35).

Upon learning that AAUG had been issuing worthless checks for the payment of claims under the Plan, ISSFIN, on behalf of ISS, demanded to Gregory that the situation be remedied. (*See id.* ¶ 19). Gregory promised to issue replacement checks on behalf of AAUG to cure the problem, but this promise was never fulfilled. (*See id.*). There existed insufficient assets for AAUG to pay claims under the subject policies because Gregory, in his capacity at AAUG, was

improperly and purposefully transferring premium dollars received by AAUG from the participants in the Plan to AAUG's affiliates for their and Gregory's financial gain. (*See id.* ¶ 30–31). Gregory continues to disperse these premiums to AAUG's affiliates, including offshore entities, despite having knowledge that AAUG is, and at all relevant times has been, insolvent and that it owes substantial amounts in the payment of claims to Plan participants. (*See id.* ¶ 31). Gregory has an ownership interest in the AAUG affiliates to which the subject premiums have been improperly funneled and has personally benefitted as a result of the misappropriation of the premiums. (*See id.*).

As a result of AAUG's lack of funds, ISSFIN, on behalf of ISS, took control of the receipt of premium payments and deposited these premiums into a bank account over which AAUG had no control, for the payment of claims. (*See id.* ¶ 18). In return, the certificate holders and providers assigned their rights, title and interest to recover the amounts of their wrongly ignored claims and fees to ISS, and it is these rights ISS seeks to enforce in the present action. (*See id.* ¶ 24). ISS has paid any disregarded claims as they have been made out of its own funds — the total amount of funds expended is nearly $2 million dollars. (*See id.* ¶ 36).

Based on the foregoing factual allegations, Plaintiff brings claims of fraud, accounting, and civil conspiracy against Gregory, and a breach of contract claim against AAUG.

### III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550

U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal*, 578 F.3d at 1260 ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.") (quotation marks and citation omitted).

## IV. DISCUSSION

Defendants seek to dismiss all claims against them. Defendants argue that the Amended Complaint should be dismissed for improper forum; for failure to join ISSFIN as an indispensable party; pursuant to the Federal Arbitration Act ("FAA"); and under the doctrine of *forum non conveniens*. Defendants assert that the fraud claim against Gregory should be dismissed because the alleged misrepresentation was premised upon a statement of opinion.

6

Defendants contend that all of claims against Gregory should be dismissed under the economic loss rule because the claims are an improper attempt at piercing the corporate veil, and for failure to join AAUG to those claims as an indispensable party. Defendants maintain that Plaintiff cannot bring a breach of contract claim on the insurance policies purchased by the other schools because there is a non-assignability provision in the policies. The Court addresses these various arguments below.

A.     **Improper Forum, Federal Arbitration Act, and ISSFIN as an Indispensable Party**

Defendants raise various arguments based upon a Terms of Business Agreement ("TBA") [ECF No. 216-1] between ISSFIN and AAUG. Although the TBA is neither attached to the Amended Complaint nor referenced by it, Defendants argue that because Plaintiff alleges that "ISSFIN was ISS's agent at all relevant times . . . with respect to its transactions and communications with AAUG and Gregory" (Am. Compl. ¶ 7), Plaintiff is bound by the TBA's terms and the Court may consider it in resolving the Motion. (*See* Mot. 4).

Once the TBA is considered, Defendants argue that the Amended Complaint should be dismissed for three reasons. First, they assert the Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(3) for improper forum "because the [p]arties agreed [in the TBA] to the application of the laws and jurisdiction in the Courts of the British Virgin Islands." (Mot. 3). Second, they state the Amended Complaint should be dismissed under the FAA because the TBA incorporates an arbitration clause. (*See id.* 4). Third, the Amended Complaint should be dismissed for lack of an indispensable party because although the TBA states that ISSFIN will always act as agent for the customers when forwarding the respective applications and dealing with claims, ISSFIN has not been joined to the present action. (*See id.*). Plaintiff argues that the TBA should not be considered because it is neither "referenced in or

7

attached to the Amended Complaint," and because "ISS'[s] claims have nothing to do with the [TBA]." (Resp. 3). The Court agrees with Plaintiff.

"On a motion to dismiss, the Court may [only] consider documents attached to the Complaint or directly referred to in the Complaint." *Jordan v. Miami-Dade County*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006); *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). As such, if the court considers materials outside the complaint, the motion to dismiss must be converted into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing FED. R. CIV. P. 12(b)). This rule is not absolute, however, as a "defendant may introduce [a] document as an exhibit to a motion attacking the sufficiency of the pleading . . . if the plaintiff has referred to the item in the complaint and it is central to the affirmative case." Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327 (3d ed. 2007); *see Day*, 400 F.3d at 1276 (noting the centrality requirement).

Here, the document that forms the basis for Defendants' improper forum, FAA, and indispensable party arguments — the TBA — is neither attached to, nor referenced by, the Amended Complaint. Rather than explain why, under the relevant case law, the TBA is central to Plaintiff's claims, Defendants simply assume the TBA is an operative document for purposes of the Motion to Dismiss.[1] This argument, without further explication, is insufficient to show the

---

[1] In their Reply, Defendants make an attempt at addressing the question of whether the Court can consider the TBA based upon Plaintiff's cited case law and arguments. (*See* Repl. 3–4). This is too little, too late. First, the Local Rules expressly disclaim this type of defensive lawyering, by which a moving party can rely upon the non-movant to perform the proper legal analysis, and then use that work as the foundation for an argument that should have been raised in the initial motion. *See* S.D. FLA. L.R. 7.1 (noting that the "reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law.").

TBA is central to Plaintiff's claims.

Furthermore, to the extent Defendants imply that Plaintiff's allegation that ISSFIN was its agent incorporates the TBA into the Amended Complaint, their argument is misplaced. The Amended Complaint specifically alleges that "ISSFIN was ISS' agent . . . with respect to its transactions and communications with AAUG and Gregory *that are the subject of this lawsuit*." (Am. Compl. ¶ 7 (emphasis added)). Because the basis for Plaintiff's claims is not the TBA, but the insurance policies themselves, Defendants' agency argument fails to persuade.

In sum, because the Court cannot consider the TBA in resolving Defendants' Motion, the improper venue, FAA, and indispensable party arguments entitle Defendants to no relief.

**B.    Gregory's Representations: Statement of Fact or Opinion?**

Defendants next argue that ISS's fraud and civil conspiracy claims should be dismissed because the representation upon which they are premised is a statement of opinion, and not a statement of fact. (*See* Mot. 7). The representation at issue states:

> In the spring of 2008, Gregory represented to ISS's agent, ISSFIN, that AAUG could, would and had the financial ability and wherewithal to insure the [] Plan. Gregory represented to ISS's agent, ISSFIN, that AAUG had quota share reinsurance coverage with various reinsurers . . . Based upon these representations, AAUG was permitted to issue group medical, dental, vision and life insurance policies to the schools participating in [the] Plan. Based upon these representations, on August 1, 2008, ISS purchased such a policy from AAUG . . . .

(Am. Compl. ¶ 8).

According to Defendants, Gregory's "statement that AAUG had the financial ability and wherewithal to ensure the [] Plan is, on its face a statement of [Gregory's] opinion of AAUG's ability to pay the claims under the [] Plan." (Mot. 8 (quotations omitted)). As Defendants phrase

---

Second, Defendants still fail to address how the TBA is *central to the legal claims* being brought in light of Paragraph 7 of the Amended Complaint.

9

it, that "a certain solvency calculation mandated by an organization, in this case the insurance regulators of the British Virgin Islands, shows a certain result . . . does not mean that [Gregory] knew that AAUG was not able to pay for all or some of the claims under [the Plan]." (*Id.* (quotations omitted)). Plaintiff responds that "Gregory's representations concerning AAUG's financial wherewithal was not mere puffery; AAUG was an insurance company seeking to underwrite risk under the [] Plan. Its solvency and financial ability was [sic] paramount to ISS' decision to buy a policy from it." (Resp. 11). The Court agrees with Plaintiff.

"[I]t is well settled in Florida that in order to be actionable a fraudulent misrepresentation must be a material fact, rather than a mere opinion or a misrepresentation of law." *Capps Agency, Inc. v. MCI Telecomms. Corp.*, 863 F. Supp. 1555, 1558 (M.D. Fla. 1993) (quotation marks and citations omitted); *see also Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 829 (S.D. Fla. 1996) (same). The Florida Supreme Court "has liberally regarded statements [regarding the financial status of a company] to be factual in nature." *Emerson Elec. Co. v. Farmer*, 427 F.2d 1082, 1087 (5th Cir. 1970) (citing *Upchurch v. Mizell*, 50 Fla. 456 (1905) (reckless statement regarding the financial condition of a prospective purchaser, where the defendant implied that he had knowledge of facts on which the opinion was based, is a statement of fact); *Houchins v. Case*, 138 Fla. 368 (1939) (party's statement that a company was in good financial condition and that stock in that company was a safe investment is a statement of fact); *Hinson v. Drummond*, 98 Fla. 502 (1929) (Florida Supreme Court found a statement concerning the solvency of a bank is a statement of fact)); *see also Forbes v. Auerbach*, 56 So. 2d 895 (Fla. 1952) (statement concerning the solvency of a corporation is a statement of fact). The alleged statements at issue in this case — Gregory's misrepresentation that his company, AAUG, was solvent and had the financial capability to insure the polices at

10

issue — clearly constitute statements of fact under Florida law, and therefore properly constitute the basis for a fraud claim. Defendants' argument to the contrary fails to persuade.

**C.      Economic Loss Rule**

Defendants next argue that Plaintiff's fraud and civil conspiracy claims are barred by the economic loss rule. According to Defendants, "[t]here is no harm alleged [in those claims] that is separate and distinct from the harm alleged from the resulting claimed breach of the [TBA]." (Mot. 11). Thus, Defendants assert that Plaintiff's fraud and civil conspiracy "claims are wholly dependent on and intertwined with alleged defective performance under the [TBA]." (*Id.*; *see id.* 10) (noting that Plaintiff's allegations against Gregory "relate to, are dependent upon, derived from and are inextricably intertwined with the subsequent performance of the [TBA]"). Plaintiff responds that the economic loss rule does not bar its fraud and civil conspiracy claims because the TBA does not govern the present dispute. (*See* Resp. 10). And even if it did, "[a] defendant who defrauds a plaintiff into entering into a contract cannot hide behind the economic loss rule to avoid a fraud claim based on its actions." (Resp. 9–10 (collecting cases)). Plaintiff is correct.

Under the economic loss rule, "parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract." *Royal Surplus Ins. Co. v. Coachman Indus., Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006) (quotation marks and citation omitted). The rule is based upon the theory that "contractual principles are more appropriate than tort principles for resolving economic loss claims." *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899, 901 (Fla. 1987)). As a practical matter, the rule restrains "[a] party to a contract" from "seeking to obtain a better bargain than originally made," by circumventing the legal rights and obligations provided for in a contract by bringing a tort claim. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536–37

(Fla. 2004).

The economic loss rule does not bar any of the claims in the Amended Complaint. First, for the reasons discussed *supra*, the TBA is not considered in resolving the Motion, and so the TBA cannot serve as the basis for Defendants' economic loss rule argument. *See Output, Inc. v. Danka Bus. Sys., Inc.*, 991 So. 2d 941, 944–45 (Fla. 4th DCA 2008) (finding the economic loss rule did not apply where the plaintiff was not a party to the contract at issue). Second, even if the TBA did apply, the economic loss rule would have no application because Plaintiff alleges that Gregory's fraudulent misrepresentations with respect to AAUG's solvency are what led Plaintiff to purchase an insurance policy from AAUG in the first instance. (*See* Am. Compl. ¶ 8) ("*Based upon these representations*, on August 1, 2008, ISS purchased such a policy from AAUG . . . ."). Where the fraud being alleged occurs in connection with misrepresentations that cause a plaintiff to enter into the transaction, "'such fraud is fraud in the inducement and survives as an independent tort.'" *2002 Irrevocable Trust for Richard C. Hvizdak v. Huntington Nat. Bank*, No. 2:08-cv-556-FtM-99DNF, 2008 WL 5110778, at *9 (M.D. Fla. Dec. 1, 2008) (quoting *D & M Jupiter, Inc. v. Friedopfer,* 853 So. 2d 485, 487–88 (Fla. 4th DCA 2003)); *see 2002 Irrevocable Trust*, 2008 WL 5110778, at *9 ("Plaintiffs allege that the fraud was perpetrated in connection with their inducement to enter the [contract] . . . and "do not allege fraud in the performance of the [contract], [so the fraudulent misrepresentation claim survives the motion to dismiss.]"). Thus, Defendants' economic loss rule argument entitles them to no relief.

**D.     Piercing the Corporate Veil**

Defendants next argue that ISS's claims against Gregory individually are an improper attempt at piercing the corporate veil. (*See* Mot. 12). According to Defendants, "[a]ll of [Plaintiff's] allegations made with respect to fraud, even if true, would relate to [Gregory's]

12

actions on behalf of the corporation; none of the allegations made can be construed as outside the scope of his authority as a principal." (*Id.*). The Court disagrees.

"It is well-settled . . . that individual officers and agents of a corporation may be held personally liable for their tortious acts, even if such acts were committed within the scope of their employment or as corporate officers." *First Fin. USA, Inc. v. Steinger*, 760 So. 2d 996, 997–98 (Fla. 4th DCA 2000) (citing *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363 (Fla. 4th DCA 1981)). As such, "[a] corporate officer or representative of a defendant corporation is not shielded from individual liability for his own torts." *Id.* at 998 (citing *Roth v. Nautical Eng'g Corp.*, 654 So. 2d 978 (Fla. 4th DCA 1995)). Indeed, "[f]raud in the inducement is a recognized intentional tort that can subject a corporate officer to individual liability." *Id.* (citing *La Pesca Grande Charters, Inc. v. Moran,* 704 So. 2d 710 (Fla. 5th DCA 1998)); *see Steinger*, 760 So. 2d at 998 (citing *Segal v. Rhumbline Int'l, Inc.,* 688 So. 2d 397 (Fla. 4th DCA 1997) (director of defendant corporation may be individually liable where complaint alleged the defendant had orchestrated the false representations made to the plaintiffs and had also allowed his name to be associated with the representations made); *Brinker v. W.P. McDevitt & Assocs., Inc.*, 693 So. 2d 712 (Fla. 4th DCA 1997) (reversing dismissal of fraud in the inducement claims where the plaintiff alleged that two individual defendants fraudulently induced him to enter into an employment contract)). Notwithstanding Gregory's status as a corporate officer, the fraud allegations are a permissible basis upon which to seek recovery from Gregory in his individual capacity.[2]

---

[2] Under the same line of reasoning, the Court rejects Defendants' argument, contained on page 17 of their Motion, that Plaintiff's civil conspiracy claim should be dismissed because "to allow ISS to recover against AAUG and then seek additional recovery against [Gregory] is to, in effect, allow ISS to 'pierce the corporate veil' without any allegation in the Amended Complaint that would allow it to do so . . . ." *See Orlovsky*, 405 So. 2d at 1364 (citing *Adams v. Brickell Townhouse, Inc.*, 388 So. 2d 1279 (Fla. 3d DCA 1980); *Ramel v. Chasebrook Construction Company*, 135 So. 2d 876 (Fla. 2d DCA 1961)) ("A

### E. Assignment of Claims

Defendants next argue that "[t]o the extent ISS is suing for breach of the Insurance Policy, the policies are not assignable without the consent of AAUG." (Mot. 13). Defendants point out that under the Insurance Policy "'[a]ssignment of coverage may be assigned only with the written consent of AAUG Insurance Company, LTD.'" (*Id.* (quoting Insurance Policy 3 [ECF No. 216-3])). Thus, because Plaintiff has not alleged that AAUG consented to any assignment of the coverage of the policy holders to Plaintiff in writing, the Amended Complaint necessarily fails to state a cause of action. (*See id.*). According to Plaintiff, the non-assignability provision has no application because, under Florida law, "'a provision against assignment in an insurance policy does not bar an insured's assignment of an after-loss claim.'" (Resp. 12 (quoting *Better Constr., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 651 So. 2d 141, 142 (3d DCA 1995)).

> Paragraph 23 of the Amended Complaint alleges:
>
> The certificate holders participating in the [] Plan . . . have submitted claims which have been improperly ignored by AAUG. In addition, AAUG failed to pay certain pharmacies and service providers . . . ("Providers") fees in connection with the [] Plan, causing these Providers to refuse to further provide medications and/or services to the certificate holders absent payment. In an effort to avoid further harm and loss to these certificate holders, and in exchange for an assignment of rights, ISS has paid to the certificate holders . . . (or directly to their medical service providers on their behalf) an amount equal to their improperly ignored claims, and to the Providers an amount equal to their improperly ignored fees. These certificate holders and Providers have assigned their rights, title and interest to recover the amounts of their wrongly ignored claims and fees to ISS, and ISS asserts its assigned rights in this regard herein.

---

corporate officer is potentially individually liable for his tortious acts even though such acts were committed in the scope of his employment by the corporation.").

The assignment of coverage occurred *after* the losses in question. "[I]t is a well-settled rule that the provision in a policy relative to consent of the insurer to transfer an interest therein does not apply to an assignment after loss." *W. Florida Grocery Co. v. Teutonia Fire Ins. Co.*, 77 So. 209, 210–11 (Fla. 1918); *see also Alpine Glass, Inc. v. Illinois Farmers Ins. Co.*, No. 06-CV-1148 (PJS/RLE), 2006 WL 3486996, at *2 (D. Minn. Dec. 4, 2006) ("[A]llowing an insured to assign its right to the proceeds of an insurance policy after a loss has occurred hurts the insurer not at all. Its obligations are fixed when the loss occurs. The assignment does not increase or decrease the financial exposure of the company in any way."). Because "anti-assignment provisions do not apply to an assignment after loss," *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 377 n.7 (Fla. 2008) (brackets and citations omitted), this argument fails.

F.  **AAUG as an Indispensable Party**

Defendants argue that by dismissing AAUG from the fraud, accounting, and civil conspiracy claims, "a full and fair determination of liability . . . cannot be made pursuant to federal law." (Mot. 14). Defendants stake their argument on Federal Rule of Civil Procedure 19, which states that a party must be joined if:

   (A) in that person's absence, the court cannot accord complete relief among existing parties; or

   (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

      (i) as a practical matter impair or impede the person's ability to protect the interest; or

      (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

According to Defendants, the fraud count should be dismissed because "[t]he very basis of Count I is alleged actions that ISS admits [Gregory] took on behalf of AAUG that resulted in the contract upon which ISS sues, yet ISS now seeks to recover only from [Gregory] individually." (*Id.* 15).

"Under generally accepted principles of tort law, the liability of joint tortfeasors is both joint and several," which means that a "plaintiff may sue one or more of them without joining the others." Wright & Miller, *supra*, § 1623. Here, Plaintiff has expressly chosen to sue Gregory, and not AAUG, as a joint tortfeasor. Although Defendants argue that Plaintiff's decision runs contrary to the Federal Rules, Defendants are mistaken: "[I]t is well-established that Rule 19 does not require the joinder of joint tortfeasors." *Nottingham v. Gen. Am. Commc'n Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) (citing *Herpich v. Wallace,* 430 F.2d 792, 817 (5th Cir. 1980)).

Defendants maintain that Plaintiff's accounting claim must also be dismissed for failure to join an essential party because

> [t]he monies that ISS seeks an accounting of were monies paid to and held by AAUG, not [Gregory]. Surely any accounting of these monies must include AAUG, as the monies have been in AAUG accounts. The accounting of these monies is inherently included in the Breach of Contract count against AAUG, so any attempt to receive damages against Gregory under this theory is clearly ab [sic] impermissible double recovery.

(Mot. 16). Defendants cite to no authority to support their argument; they do not articulate why the fact that money has been placed in AAUG accounts makes AAUG an indispensable party; and they fail to explain why the breach of contract claim against AAUG makes the civil conspiracy claim an impermissible double recovery. Furthermore, as Plaintiff points out, the accounting claim seeks an accounting with respect to premiums paid to AAUG under the Plan, which Plaintiff has alleged Gregory misappropriated and utilized for his own personal gain. (*See* Resp. 14 n.8). Without more, the Court will not dismiss the accounting claim.

F.    **Forum Non Conveniens**

Defendants next argue that the entire Amended Complaint should be dismissed under the doctrine of *forum non conveniens*.

"To prevail on a motion to dismiss for *forum non conveniens*, the moving party must show that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *2002 Irrevocable Trust*, 2008 WL 5110778, at *5 (citing *Liquidation Comm'n of Banco Intercontinental, S.A. v. Alvarez Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008)). Within the context of the *forum non conveniens* analysis,

> [p]ertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment. Relevant public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally.

*Pierre–Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009) (quoting *Alvarez Renta*, 530 F.3d at 1356–57). In applying the foregoing factors, "a defendant invoking forum non conveniens 'bears a heavy burden in opposing the plaintiff's chosen forum.'" *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

Although the burden of persuasion in securing dismissal under the doctrine of *forum non conveniens* falls upon Defendants, they devote a scant six sentences to their argument:

> In the instant matter, Defendant AAUG is a company organized and operated from the [British Virgin Islands], and [Gregory] is a principal of that company. ISS has not alleged that harm was done in the United States to any of the insureds in its group. Furthermore, due to the Agreement between the parties, the Courts of the [British Virgin Islands] are to have jurisdiction over this case. If this Court would find that it has jurisdiction, it would have to apply the law of the [British Virgin Islands]. As this Court and all counsel involved are presumably not

familiar with the nuances of the insurance laws of the [British Virgin Islands], this may present a 'legal problem' as discussed above in the American Dredging Co. case. Surely it would be much more appropriate for a court in the [British Virgin Islands] to hear and adjudicate this case.

(Mot. 17). Defendants have not sufficiently explained why the *forum non conveniens* factors support dismissal.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[ECF No. 216]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 25th day of July, 2012.

                                            *[signature]*
                                          **CECILIA M. ALTONAGA**
                                          **UNITED STATES DISTRICT JUDGE**

cc: counsel of record