**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-62115-CIV-ALTONAGA/Simonton**

**INTERNATIONAL SCHOOLS SERVICES, INC.**,

Plaintiff,

vs.

**AAUG INSURANCE COMPANY, LTD.** and **GREGOR GREGORY**,

Defendants.
_______________________________/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiff, International Schools Services, Inc.'s ("ISS['s]") Amended Motion for Sanctions ("Motion") [ECF No. 232] against Defendants, AAUG Insurance Company, Ltd. ("AAUG") and Gregor Gregory's ("Gregory") (collectively "Defendants"), filed on August 20, 2012. The Court has carefully considered the parties' written submissions and applicable law.

## I. BACKGROUND

### A. Procedural Background

This case arises from an insurance company's failure to pay the healthcare claims of its insureds, employees and educators of forty-three international schools. On November 3, 2010, one of the insureds, ISS, filed a Complaint [ECF No. 1] against AAUG and Gregory, AAUG's officer, director, and the person in charge of the company's daily operations. The Complaint alleges claims of fraud, accounting, and civil conspiracy against both AAUG and Gregory, and a breach of contract claim against only AAUG.

ISS also sought a preliminary injunction to freeze Defendants' assets and obtain an accounting of AAUG's records relative to the premiums paid and claims disbursed under the ISS Financial & Insurance Network, Inc. EduCare International Plan ("Plan"). (*See* Mot. for Prelim. Inj. [ECF No. 6]). Following an evidentiary hearing, the Court granted ISS' Motion for a Preliminary Injunction. (*See* Order Granting Mot. for Prelim. Inj. ("Prelim. Inj.") 12 [ECF No. 54]). The Preliminary Injunction provides in part:

> 1. AAUG Insurance Company, Ltd. and its officers, directors, agents . . . are restrained and enjoined from dissipating, disbursing, diverting, transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, converting, withdrawing, or otherwise disposing of any and all assets, funds, monies, securities, investments, receivables, proceeds and/or unliquidated interests of any type whatsoever now in AAUG's possession and/or under its control and/or owed to it or which in the future becomes owed to it, as well as any and all assets, funds, monies, securities and/or unliquidated interests hereinafter received by it, except the ordinary and necessary operating expenses of AAUG Insurance Company, Ltd. may be paid no more than ten (10) days in advance of the due date for each expense and must be accounted for with supporting documentation to International Schools Services, Inc. on the fifteenth (15th) and thirtieth (30th) day of each month following payment until further order of the Court.
>
> . . .
>
> 4. Any and all AAUG Insurance Company, Ltd. funds not used for ordinary and necessary operating expenses, as defined in paragraphs two (2) and three (3) above, shall be used to pay outstanding claims under the ISSFIN EduCare International Plan, which shall be treated as ordinary and necessary operating expenses under this Order.
>
> . . .
>
> 7. The expenses incurred by International Schools Services, Inc. and/or any forensic accountant or forensic accounting firm or International Schools Services, Inc.'s choosing in inspecting, copying, analyzing and providing reports in connection with AAUG Insurance Company, Ltd.'s books and records will be considered ordinary and necessary expenses of AAUG Insurance Company, Ltd. and will be paid by AAUG Insurance Company, Ltd. out of its existing bank accounts.

(*Id.* 12–13).

After the Court issued the Preliminary Injunction, Defendants filed a Motion for Rehearing [ECF No. 66] and a Notice of Interlocutory Appeal [ECF No. 93] to the U.S. Court of Appeals for the Eleventh Circuit. The Court denied Defendants' Motion for Rehearing in an

Order [ECF No. 155] issued on January 7, 2011. Defendants subsequently sought a stay of enforcement of the Preliminary Injunction pending the appeal. (*See* Mot. to Stay 10 [ECF No. 117]). The Court denied the requested stay as well. (*See* Feb. 18, 2011 Order [ECF No. 134]).

On February 15, 2011, ISS filed a Contempt Motion [ECF No. 132] seeking an order holding Defendants in civil contempt for violating the Preliminary Injunction and compelling Defendants' compliance with the Injunction. On March 16, 2011, the Court entered an Order [ECF No. 154] granting the Contempt Motion, determining that Defendants had violated the Preliminary Injunction, and reserving jurisdiction to impose appropriate sanctions. Defendants subsequently filed a Motion for Reconsideration [ECF No. 156], in which they asked the Court to reconsider the March 16 Order because an evidentiary hearing was not conducted before Defendants were found to be in contempt. On April 14, 2011, the Court issued an Order [ECF No. 159] granting the Motion for Reconsideration. An evidentiary hearing was thereafter held on June 10, 2011. (*See id.*; June 10, 2011 Hr'g Tr. [ECF No. 172]).

Having considered the parties' positions, on October 4, 2011, the Court issued its Contempt Order [ECF No. 180] granting the Contempt Motion. The Contempt Order found that "ISS ha[d] presented clear and convincing evidence that funds ha[d] been dissipated or transferred in violation of the Preliminary Injunction." (*Id.* 9). The Court further determined that Defendants had violated the Preliminary Injunction by "failing to pay ISS' forensic accountant, and failing to use any money not used for ordinary and necessary operating expenses to pay off outstanding claims." (*Id.* 10). The Court accordingly held Defendants "in civil contempt for violating the Preliminary Injunction [] by allowing AAUG's funds to be transferred or dissipated and by failing to pay ISS' forensic accounting bills," while "reserv[ing] jurisdiction to award appropriate sanctions following the resolution of the pending interlocutory appeal."

(*Id.* 11).

On December 12, 2011 — while Defendants' interlocutory appeal was pending — ISS filed a motion asking the Court to lift the Preliminary Injunction and to grant summary judgment on its breach of contract claim. (*See* [ECF No. 181]). The Court denied ISS' motion without prejudice (*see* Order [ECF No. 183]) on December 13, 2011, finding it lacked jurisdiction. The Court expressly stated in its Order, however, that the Court would be inclined to lift the Injunction if the Court had jurisdiction. (*See id.*).

In light of the December 13 Order, ISS filed a Motion to Remand [ECF No. 188-1] with the Eleventh Circuit, asking that court to remand the case to the undersigned, while holding the appeal in abeyance pending the Court's resolution of the recently-filed motion. In their Response [ECF No. 188-2] filed with the Eleventh Circuit, Defendants pointed out that if the undersigned were to simply lift the Preliminary Injunction — as opposed to vacating it — Defendants could still be exposed to sanctions under the Contempt Order. (*See id.* 3). Nevertheless, on January 6, 2012, the Eleventh Circuit entered an Order of Dismissal [ECF No. 187], remanding the case, while denying the remand request as moot. The Eleventh Circuit declined to issue a ruling as to the sanctions issue raised by Defendants because it was "outside the scope of the appeal." (*Id.* 3). Defendants would be "free to ask the district court to vacate its [Contempt Order] once the Preliminary Injunction has been lifted." (*Id.*).

On January 6, 2012, ISS filed a Motion to Re-Calendar [ECF No. 191], requesting the Court open the case and decide ISS' earlier motion seeking to lift the Preliminary Injunction so that ISS might secure partial summary judgment. On January 16, 2012, Defendants filed a Response to the Motion to Re-Calendar [ECF No. 188], arguing that ISS' Motion should either be stricken, or, at the very least, denied in part so that the Preliminary Injunction could be lifted

and then "vacat[ed] . . . immediately after it is lifted in order to fully eliminate and moot the issues on appeal." (*Id.* 7). In other words, Defendants wanted the Court to not only lift the Injunction, but also to vacate it so as to limit Defendants' "potential[] expos[ure] to sanctions." (*Id.* 4).

The Court entered an Order [ECF No. 192] on January 18, 2012 "**GRANT[ING]**" ISS' Motion, "**SET[TING] ASIDE**" the Preliminary Injunction, and inviting ISS to re-file its motion for partial summary judgment. (*Id.* 1).[1] Approximately seven months later — and after various proceedings not relevant to the present dispute — Plaintiff filed the Motion requesting sanctions for Defendants' "contumacious conduct in allowing AAUG's funds to be transferred or dissipated and by failing and refusing to pay for expenses incurred by FTI, the forensic accounting firm, in violation of the [Preliminary Injunction]." (*Id.* 1). The Motion and Defendants' Response [ECF No. 236] are supported by various exhibits discussed in the next section.

**B. Facts Relevant to the Present Motion**

ISS' exhibits submitted in support of the Motion contain months of correspondence between ISS' counsel and Defendants' counsel. The exhibits offer the following timeline of events. On December 31, 2010, ISS' counsel wrote defense counsel to schedule a teleconference to discuss Defendants' decision to transfer $351,316.20 out of an AAUG account, in violation of the Preliminary Injunction. (*See* Ex. D [ECF No. 232-5]). ISS' counsel demanded that Defendants immediately secure the return of the money, but Defendants refused to comply. (*See id.*). ISS' counsel thereafter conferred with defense counsel on multiple occasions in January

[1] Due to a scrivener's error, the Court issued an Amended Order [ECF No. 197] on February 1, 2012, which once again "**SET ASIDE**" the Preliminary Injunction. (*Id.* 1).

2011, demanding that Defendants return the monies to the AAUG account, but ISS' requests were continually rebuffed. (*See* Exs. E & F [ECF Nos. 232-6, 7]).

On January 24, 2011, ISS' counsel wrote Defendants' counsel a detailed letter asking that AAUG comply with its obligations under the Preliminary Injunction. (*See* Ex. G [ECF No. 232-8]). Although ISS' counsel requested a response by January 31, 2011, Defendants ignored the letter. (*See id.*). That same day, ISS' counsel wrote defense counsel a letter enclosing a copy of an invoice of its forensic accounting firm, FTI Consulting ("FTI"), for work performed pursuant to the Preliminary Injunction. (*See* Ex. H [ECF No. 232-9]). Defendants ignored this letter, too. ISS' counsel subsequently requested that Defendants comply with their obligations under the Preliminary Injunction on multiple occasions in February, March, and June of 2011. (*See* Exs. I–L [ECF Nos. 232-10, 11, 12, 13]). Again, Defendants were unwilling to comply.

Thereafter, on August 1, 2012 — approximately seven months after the Preliminary Injunction was lifted — ISS' counsel sent defense counsel an email requesting that he either confirm the date when the FTI bills would be paid, or, alternatively, join in a telephonic meet-and-confer session. (*See* Ex. M [ECF No. 232-14]). The following day, on August 2, 2012, ISS' counsel sent defense counsel an email requesting a telephonic meet-and-confer conference, and attaching a letter detailing Defendants' failure to comply with the Court's Orders. (*See* Ex. N [ECF No. 232-15]). The attached letter specifically advised Defendants that ISS would move for the imposition of sanctions unless Defendants complied with the Court's Orders, and further advised Defendants that ISS would seek recovery of attorney's fees incurred in connection with Defendants' contemptuous behavior. (*See id.*).

On August 7, 2012, ISS' counsel sent yet another email confirming that a motion for sanctions would be filed if Defendants refused to comply with the Court's Orders. (*See* Ex. O

[ECF No. 232-16]). That same day the attorneys held another telephonic meet-and-confer conference. (*See* Ex. P. [ECF No. 232-17]). On August 8, 2012, ISS' counsel sent Defendants' counsel an additional detailed letter confirming what was discussed during the August 7, 2012 meet-and-confer teleconference. (*See id.*). After the parties were unable to amicably resolve their issues, ISS filed the present Motion for Sanctions.

Defendants' Response does not dispute ISS' timeline of events. The Response is accompanied by two exhibits, each of which consists of an email of November 2011 — the period during which Defendants' appeal of the Preliminary Injunction was pending. The first email is from defense counsel, writing in response to a query from ISS' counsel inquiring as to whether Defendants would oppose ISS' motion to lift the Preliminary Injunction. (*See* Ex. A [ECF No. 236-1]). In this email, defense counsel raises the issue of the outstanding Contempt Order and expresses a concern that simply lifting the Injunction would leave Defendants exposed to sanctions. (*See id.*). In the second email, ISS' counsel responds to these concerns, stating ISS "d[id] not intend to address the [C]ontempt [O]rder or seek sanction [sic] pursuant to that [O]rder in ISS' motion to lift the preliminary injunction and motion for partial summary judgment against AAUG in the breach of contract claim." (Ex. B [ECF No. 236-2]). In their Response, Defendants also point out that the January 12 Order "did not lift the injunction as requested by ISS, but rather held . . . that the [Preliminary Injunction] was '**SET ASIDE**,'" while further noting that "[n]o objection or appeal was filed by either party concerning the Court's setting aside of the injunction." (Resp. 4 (quoting Jan. 12 Order)).

Thereafter, on September 7, 2012, ISS filed its Reply [ECF No. 239]. The Court considers the parties' arguments below.

## II. LEGAL STANDARD

"Civil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained." *Bank of Am., N.A. v. United Cities Grp., Inc.*, No. 08-21917-CIV, 2009 WL 855987, at *4 (S.D. Fla. Mar. 31, 2009) (citation omitted). "The party seeking contempt bears the initial burden of showing, by clear and convincing evidence, a willful disregard for the authority of the court through failure to comply with a court order." *Id.* (citing *Ga. Power Co. v. Nat'l Labor Rel. Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007)). Once a party has been held in contempt, the district court may issue sanctions that are remedial in nature and designed to obtain compliance with a court order, or, alternatively, to compensate for damages sustained as a result of noncompliance. *See Keegan v. Lawrence*, 778 F. Supp. 523, 525 (S.D. Fla. 1991) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1948)). District courts enjoy "wide discretion to fashion an equitable remedy for [civil] contempt that is appropriate to the circumstances." *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (quoting *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987)).

## III. DISCUSSION

ISS asserts it is entitled to sanctions because Defendants repeatedly violated the Preliminary Injunction and because the Contempt Order is still valid. ISS offers a list of sanctions it believes are justified given Defendants' behavior. In resolving the Motion, the Court first answers whether ISS is entitled to sanctions, and, if so, what form these sanctions should take.

### A. Is ISS entitled to sanctions?

ISS argues that sanctions are justified because, as established by the Contempt Order,

Defendants have failed to comply with the Preliminary Injunction. According to ISS, notwithstanding its best efforts to secure compliance, Defendants have brazenly refused to act in accordance with the Court's Orders. ISS emphasizes that although Defendants were previously obligated to pay the FTI bills, Defendants have repeatedly failed to do so.

Defendants maintain the Motion should be denied because the January 12 Order actually vacated the Preliminary Injunction. In support, Defendants cite to cases showing the phrase "'[s]et aside' usually means 'vacate.'" (Resp. 5 (collecting cases)). Defendants further offer a range of reasons why the undersigned was justified in setting aside, rather than lifting, the Preliminary Injunction. Having concluded that the Court vacated the Preliminary Injunction, Defendants insist the Contempt Order is void.

ISS replies thusly. First, the Order setting aside the Preliminary Injunction "nowhere states or suggests that Defendants [sic] contemptuous conduct . . . was being forgiven." (Repl. 2). Second, as the issuer of the Order, the Court "certainly understands what it intended to do when it granted ISS' motion to *lift* the Preliminary Injunction Order." (*Id.* 3). ISS points out that it "did not move for the Preliminary Injunction [] to be 'vacated,'" but only "moved, in part, 'to lift the Preliminary Injunction.'" (*Id.* (quoting Mot. to Re-Calendar 1)). ISS further emphasizes that its "motion to lift the preliminary injunction was granted despite Defendants' argument in response thereto that the Preliminary Injunction [] should be vacated rather than lifted." (*Id.* (citing Resp. to Mot. to Re-Calendar 4)). The balance of ISS' Reply explains why the Contempt Order was justified, thereby demonstrating that the Motion for Sanctions was filed in good faith.

At the outset, the Court notes that it has already held Defendants "in civil contempt for violating the Preliminary Injunction Order by allowing AAUG's funds to be transferred or dissipated and by failing to pay ISS' forensic accounting bills." (Contempt Order 11). Prior to

issuing this ruling, the Court received extensive briefing and held an evidentiary hearing. And after carefully considering the evidence and oral and written submissions, the Court found "ISS ha[d] presented clear and convincing evidence that funds ha[d] been dissipated or transferred in violation of the Preliminary Injunction" (*id.* 9), and that Defendants violated the Preliminary Injunction by "failing to pay ISS' forensic accountant, and failing to use any money not used for ordinary and necessary operating expenses to pay off outstanding claims" (*id.* 10). The Court furthermore "reserve[d] jurisdiction to award appropriate sanctions following the resolution of the pending interlocutory appeal." (*Id.* 11). The Court will not reconsider that decision in the present Order.

Another point is worth mentioning. Although the Preliminary Injunction is no longer in effect, this does not mean that the Contempt Order — premised on Defendants' violation of the Preliminary Injunction while it was still in effect — is moot. *See Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993) (noting that compensatory civil contempt proceedings may continue even when the underlying injunction has been dissolved) (citing *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 400 (5th Cir. 1987); *Backo v. Local 281, United Bhd. of Carpenters & Joiners of Am.*, 438 F.2d 176, 182 (2d Cir. 1970)). Accordingly, the Contempt Order is still valid — and Defendants' behavior is still sanctionable — so long as neither the Court nor the parties have taken any action to undermine the initial validity of the Preliminary Injunction.[2]

The Court has taken no such action. The January 12 Order did not vacate the Preliminary Injunction; the undersigned, as the issuer of that Order, did not intend to vacate the Preliminary Injunction. The Eleventh Circuit has previously explained that the district court is best situated

[2] As explained *infra*, the particular sanctions that ISS is entitled to may have changed, however, given that the Preliminary Injunction is no longer in effect.

to interpret the meaning of its own orders. *See Cave v. Singletary*, 84 F.3d 1350, 1355 (11th Cir. 1996) (quoting *Matter of Chicago, Rock Island & Pac. R.R. Co.*, 865 F.2d 807, 810 (7th Cir. 1988) ("The district court is in the best position to interpret its own orders.")). Indeed, a district court's interpretation of its own order is accorded deference and will not be overturned on appeal so long as it is reasonable. *See id.*, 84 F.3d at 1355 (citing *Commercial Union Ins. Co. v. Sepco Corp.*, 918 F.2d 920, 921 (11th Cir. 1990); *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 388 (5th Cir. 1980)).

The context in which the undersigned used the words 'set aside' in the January 12 Order demonstrates the reasonableness of this interpretation. ISS' Motion to Re-Calendar sought merely to lift the Preliminary Injunction (*see* Mot. to Re-Calendar 1), whereas Defendants' Response to the Motion to Re-Calendar argued the Motion to Re-Calendar should be denied in part so that the Injunction could be lifted and then "vacat[ed] . . . immediately after it [was] lifted in order to fully eliminate and moot the issues on appeal." (Resp. to Mot. to Re-Calendar 7). Defendants sought the latter result to avoid the "potential[] expos[ure] to sanctions" that would occur if the Court were to only "lift[] or dissolve[] the injunction." (*Id.* 4). The Court considered these arguments and thereafter 'granted' ISS' Motion to Re-Calendar, thereby rejecting Defendants' contrary suggestion. Accepting Defendants' interpretation of 'set aside,' would require the undersigned to find that she implicitly — and without any further explanation — denied ISS' Motion in part by lifting and vacating the Preliminary Injunction in accordance with Defendants' position. Such an interpretation is untenable. Thus, even assuming Defendants are correct that "'[s]et aside" *usually* means "vacate'" (Resp. 5 (citations omitted and emphasis added)), the context in which the Court chose her words clarifies that the Court did not vacate the

Preliminary Injunction in the January 12 Order.[3]

Neither has ISS taken any action to moot the Contempt Order. The Court rejects Defendants' argument that ISS' November 15 email somehow limited ISS' ability to pursue sanctions at a later time given that ISS' counsel only stated ISS "did not intend to address the contempt order or seek sanction [sic] pursuant to that order in ISS' motion to lift the preliminary injunction and motion for partial summary judgment against AAUG." The prepositional phrase, "in ISS' motion," makes clear that ISS was not promising, or even purporting to promise, that it would *never* seek sanctions, but only that it would not be seeking sanctions in that motion. ISS did, as promised, refrain from pursuing sanctions in its motion to lift the Preliminary Injunction and motion for partial summary judgment against AAUG. It was only after Defendants refused to comply with the Court's Orders that ISS filed the present Motion.

For the foregoing reasons, the Court reaffirms that the Preliminary Injunction was set aside, rather than vacated from its inception, and the Contempt Order is still in effect. Defendants' contemptuous behavior is therefore still sanctionable. The next section discusses what sanctions are appropriate given the circumstances of this case.

**B. What are appropriate sanctions?**

ISS' Motion seeks a variety of sanctions, many of which are quite severe. ISS insists severe sanctions are justified given Defendants' persistent disregard of the Court's Orders. Simply requiring Defendants to modify their conduct according to the now-lifted Preliminary Injunction, in Plaintiff's view, is not enough: Defendants must also be punished for their obstinate behavior. ISS further requests that any and all sanctions be entered against both

[3] The Eleventh Circuit's earlier use of the words "set aside" as distinct from the term "vacate" in its Order of Dismissal further supports this conclusion. (Order of Dismissal 3 ("Appellants agree that the preliminary injunction should be *set aside*, but they deny that *setting aside* the preliminary injunction could moot this appeal . . . . Appellants are free to ask the district court *to vacate* its October 4, 2011[] order once the preliminary injunction has been lifted.") (emphasis added).

AAUG and Gregory jointly and severally given that Gregory controls and dominates AAUG[4] and each Defendant was previously held in contempt. In particular, ISS requests the Court enter an order:

(1) Directing Defendants, jointly and severally, to pay []$78,940.77, the full amount of the FTI invoices, plus interest from June 23, 2011 forward, to Plaintiff within two (2) business days of the Court's Order on this Sanctions Motion;

(2) Requiring Defendants, jointly and severally, to restore to AAUG all funds that were dissipated on or after November 11, 2010 within two (2) business days of the Court's Order on this Sanctions Motion;

(3) Awarding Plaintiff its reasonable attorneys' fees in filing this Sanctions Motion and the Contempt Motions, the amount of which will be proven by Plaintiff if this sanction request is granted;

(4) Awarding Plaintiff a monetary sanction in the amount of $10,000 per day commencing two (2) business days after the Court's Order on this Sanctions Motion and continuing day to day thereafter unless and until the contempt is purged;

(5) Directing Defendants, and each of them, to remove from the Internet any website material advertising or promoting AAUG or Gregory in the insurance industry;

(6) Directing the Clerk to strike the pleadings of Defendants commencing two (2) business days after the Court's Order on this Sanctions Motion unless and until the contempt is purged;

(7) Requiring Defendants, jointly and severally, to pay to Plaintiff ISS the amount of $350,000.00, representing the amount slightly less than the amount that Defendants sent or allowed to be sent to American Premier in violation of the PI Order; and

(8) The Court should sanction Defendants for their transparently offensive violations of the PI Order, contempt and continued and consistent defiance of this Court's authority, which has been an affront to this Court, prejudiced access to health care of teachers and employees of schools that were insured by AAUG under the EduCare Plan in such other and further manner(s) as the Court deems just, equitable and proper.

(Mot. 11–13 (footnote call number omitted)).

---

[4] ISS points out that Gregory has previously told the Court that he is "an officer and director of AAUG Insurance Company, Ltd., and the person in charge of the company's daily operations." (Gregory Aff. ¶ 2 [ECF No. 137-1]).

According to Defendants, many of ISS' requested sanctions go beyond the scope of this case. Defendants contend, for example, that the sanction directing Defendants to remove website promotions from the Internet is inappropriate because the website is "irrelevant" and ISS has presented no proof that Defendants are "prey[ing] on new unsuspecting customers." (*Id.* 9 (quotations and citation omitted)). Defendants further maintain that

> if the Court were to grant ISS's Motion, it would impose sanctions that are unusually punitive for civil contempt, such as ISS's outrageous request for $10,000 per day sanctions, and shutting down AAUG's website. Such relief is not designed to compensate ISS for its alleged losses, and would amount to what is essentially another injunction without ISS posting a bond.

(*Id.* 11). Thus, in Defendants' view,

> [t]he real and improper purpose behind ISS's Motion is to vilify Defendants by wrongfully accusing Defendants of flouting the Court's authority. ISS is attempting to deprive Defendants of due process by obtaining what is essentially a judgment, without having a trial on the merits.

(*Id.* 8).

The Court agrees that some of ISS' requested sanctions are appropriate, but finds that many others are not. In sanctioning civil contempt, the Court has "wide discretion to fashion an equitable remedy . . . [that] serve[s] one of two broad purposes: (1) coercing the contemnor to comply with a court order, or (2) compensating a party for losses suffered as a result of the contemptuous act." *City of Miami*, 195 F.3d at 1298 (citations omitted). And "[i]n serving these ends," the Court's "civil contempt power is measured solely by the requirements of full remedial relief." *Id.* (internal quotation marks and citations omitted). The Court may not "use the civil contempt power to impose what amounts to a punitive or criminal contempt sanction." *Id.* (citations omitted). Applied to ISS' Motion, these governing principles support more limited relief than that suggested by ISS.

It is clear that ISS' request for an order directing Defendants to pay ISS' forensic accounting invoices, with interest, is appropriate. This sanction is justified because the Preliminary Injunction clearly required Defendants to pay "[t]he expenses incurred by . . . any forensic accountant or forensic accounting firm" that ISS selected for "inspecting, copying, analyzing and providing reports in connection with AAUG Insurance Company, Ltd.'s books and records." (Prelim. Inj. 13). The Contempt Order already determined that "Defendants [were] in violation of the Preliminary Injunction for failing to pay ISS' forensic accountant . . . ." (*Id.* 10). ISS is accordingly entitled to compensation for the FTI invoices, with interest.

ISS is also entitled to attorney's fees, as it is well-established that a district court may award fees based upon a finding of civil contempt. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 140 F. App'x 860, 864 (11th Cir. 2005) (affirming award of attorney's fees in a civil contempt proceeding); *Tom James Co. v. Morgan*, 141 F. App'x 894, 899 (11th Cir. 2005) (same); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) (same). The Contempt Order establishes the basis for this award, and the Court will award fees in a comprehensive manner, that is, so as to compensate ISS for all *reasonable* work that went into securing compliance with the Preliminary Injunction. This will also include attorney's fees incurred in the process of litigating the various contempt proceedings. However, the Court reserves jurisdiction to address the amount of fees to be awarded at the conclusion of this case.

The Court is not persuaded to impose additional sanctions. Because the Preliminary Injunction is no longer in effect, the Court may not issue a coercive civil sanction, such as requiring Defendants to restore to AAUG all funds that were dissipated in violation of the

Preliminary Injunction.[5] *See Klett*, 965 F.2d at 590 ("A court cannot impose a coercive civil contempt sanction if the underlying injunction is no longer in effect.") (citing *Shillitani v. United States*, 384 U.S. 364 (1966); *F.T.C. v. Stroiman*, 428 F.2d 808 (8th Cir. 1970)). ISS' requests for a heavy-handed $350,000.00 lump sum payment and an order requiring Defendants to remove various website materials are overly punitive and lack sufficient support or explanation. Finally, the Court declines ISS' request for a monetary sanction and the striking of pleadings as penalties for Defendants' anticipated failure to timely comply with this Order, although the Court will consider imposing additional sanctions should that be necessary.

Defendants are surely aware of the serious nature of violating a court order — parties may be imprisoned for such behavior. *See, e.g., Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1531 (11th Cir. 1992) (affirming district court's imprisonment of a party found to be in civil contempt for violating a court order). The Court fully expects Defendants will demonstrate absolute and timely adherence to the Court's dictates.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that ISS' Amended Motion for Sanctions **[ECF No. 232]** is **GRANTED in part and DENIED in part** as follows:

1. Defendants are hereby ordered to pay the expenses incurred by ISS' use of a forensic accounting firm within fourteen (14) calendar days of being presented with an invoice by ISS.

2. The Court will address the matter of attorney's fees at the conclusion of this case.

3. The Court reserves jurisdiction to impose further sanctions for non-compliance with

[5] Indeed, it is also unclear what this sanction would accomplish given that Defendants could immediately move those funds out of AAUG's account.

this Order.

**DONE AND ORDERED** in Miami, Florida, this 17th day of October, 2012.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record